## In re ECHOLS.

District Court, N. D. Texas, Dallas Division. November 17, 1928.

No. 2672.

J. D. Kugle, Edward Meek, and N. B. Halporn, all of Dallas, Tex., for bankrupt.

Grace N. Fitzgerald, of Dallas, Tex., for trustee.

ATWELL, District Judge. On this the 17th day of November, A. D. 1928, in chambers, there has been presented to me an unfiled "application for a release from imprisonment," of the bankrupt, Echols.

On the 1st day of November, 1928, this case was before me on certificate from the referee and upon proof and argument, in open court, by the bankrupt and the trustee. The order entered at that time correctly reflects the various steps that were taken before the referee and the steps that were taken before the court.

There is no present reason for the refer-

ence of this new application to a master or to the referee for taking further proof. The case, In re Nevin (C. C. A.) 278 F. 601, relied upon by the applicant, may be accepted as satisfactory with reference to procedure; but it is not at all persuasive upon the facts of this particular case. The bankrupt is known, beyond dispute, or the shadow of the slightest doubt, to have had in actual cash, in his possession, in this case, insurance funds in excess of $3,000, shortly before he filed his petition in bankruptcy. His entire course in getting possession of the funds through the banks, of which he was not a customer, and that he might conceal the fact that he had collected the same, is in harmony with his explanation that he had then lost the bulk of it in gambling.

The referee did not believe the bankrupt and entered a judgment requiring him to turn over $2,500 to the trustee; the amount being fixed at $2,500 so as to be on the safe side. The bankrupt did not appeal from this order, nor seek to have it reviewed within the time fixed for such procedure. Thereafter, when the contempt proceedings were begun the bankrupt sought to have a review of the original question. He had no right to such review, but this court allowed him to offer any testimony that he might have which would shed any light upon any condition that might have arisen after the entry of the order and which might account for his alleged present inability to turn over, as ordered. Clark v. Milens (C. C. A.) 28 F.(2d) 457. As has been said in many similar cases, the mere assertion of the bankrupt, and his mere reiteration of inability, if accepted as a legal excuse, would make entirely unavailing any order issued by a court which required the releasing of any property alleged to be in his possession. It is an issue of fact. The fact in this case has been found against him.

In the case of Autin v. Piske (C. C. A.) 24 F.(2d) 626, in the Fifth Circuit, Judge Foster, speaking for the court, said: "The bankrupts, although adjudication was within two months after the insurance money had been collected, surrendered no cash to the trustee, and did not schedule the store that Philip Autin was operating. In explanation of the loss of the insurance money Philip Autin testified that he had withdrawn $2,500 in cash from the safe in his brother's residence and had started for the country to make payment to a creditor, who was pressing him. This was after the purchase of the store by Clay Autin. On the public road near Westwego, Jefferson Parish, he was held up and robbed. His testimony in regard to this oc-

currence was so vague and indefinite of itself, and so improbable, that it is unworthy of belief, and the referee was justified in rejecting it entirely. The same may be said of Clay Autin's testimony regarding his accumulation of $3,000 or $4,000 in cash, which he kept on hand in his residence. The inevitable deduction from the testimony of these two witnesses is that the store was in fact purchased with the insurance money belonging to the bankrupts, and that the claim of Clay Autin is fictitious, and the transfer of title to the grocery store in his name a pure simulation."

There is nothing that the court conceives it to be its duty to be done at the present time.